Robert WALNER and Wallace Walner as
Trustees, for Wallace Walner,
Plaintiffs,

v.

Benjamin FRIEDMAN et al.,
Defendants.

No. 75 Civ. 1894.

United States District Court,
S. D. New York.

Oct. 6, 1975.

Ira Jay Sands and Sidney A. Florea by Sidney A. Florea, New York City, for plaintiffs.

Dickstein, Shapiro & Morin by Sidney Dickstein, New York City, for defendants Goldman, Trager, Simmons, Smith, Jaegerman, Friedman, Trivision, Hull, Barry, and Solitron.

Davis, Polk & Wardwell by Robert B. Fiske, Jr., Jon Y. Arnason and Christopher Meyer, New York City, for defendant Price Waterhouse.

D'Amato, Costello & Shea by Robert E. Meshel, and Howard Wildman, New York City, for defendant Louis Sternbach.

## MEMORANDUM DECISION

BRIEANT, District Judge.

All defendants but one in this shareholders derivative action move for an order dismissing the complaint pursuant to Rules 12(b)(6) or 12(b)(1) or 9(b) and

11, F.R.Civ.P., or alternatively, for a stay against further prosecution of the action, and for costs.

Plaintiffs are shareholders of Solitron Devices, Inc. ("Solitron") a New York corporation, the stock of which is publicly traded. Defendants are the corporation itself, two accounting firms and persons now or formerly members of Solitron's management, directors and officers.

The underlying facts as developed at the hearing held on this motion, or appearing of record, may be summarized briefly. On March 19, 1975, the Securities and Exchange Commission ("SEC") filed an action against Solitron in the District Court for the District of Columbia. This action was terminated on April 17, 1975 by a stipulation and order pursuant to which Solitron undertook to conduct an inquiry to determine the extent to which certain financial filings with the SEC previously made by Solitron should be re-stated and corrected.

Solitron was the only party to that litigation. The complaint there alleged that Solitron had violated various provisions of the federal securities laws by reporting false and misleading financial information.

Thereafter, a number of class actions were filed in this Court by persons who claimed that they had purchased or sold Solitron securities in reliance on financial statements of Solitron claimed to be false. These cases have been consolidated pursuant to my Order filed June 11, 1975 in *Sirota v. Solitron Devices, Inc.*, 75 Civ. 1369, and that litigation is hereafter referred to for convenience as the "Consolidated Class Action."

A consolidated amended complaint has been filed in that action. Price Waterhouse & Co., one of the movants here, is not, and probably will not be, named as a defendant in the consolidated class action.

The pleading in this action, filed April 21, 1975, is entitled "Verified Complaint in Derivative Action." It shows on its face (¶2) "plaintiff [sic] brings this claim for relief derivatively, in the right and for the benefit of Solitron." The claim pleaded is based upon "violations of Sections 10, 14, 18 and 20 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a and rules thereunder, and applicable principles of common law. (Complaint, ¶1). Subject matter jurisdiction is based upon Section 27 of the Exchange Act, and "principles of pendent jurisdiction." (Complaint, ¶3).

Plaintiffs own 1,000 common shares of Solitron out of approximately 4,600,000 such shares outstanding. Their Complaint asserts that Solitron's management and its accountants:

"caused Solitron to prepare and file false and misleading financial statements and reports to the Securities and Exchange Commission and shareholders, and filed such false and misleading reports with the Securities and Exchange Commission and distributed some to shareholders in false and misleading proxy statements and annual reports." (Complaint, ¶16).

As damage resulting to Solitron, in whose capacity this action is brought, plaintiffs allege:

"Time and effort of the officers and directors and funds of the Company have been expended in defending against allegations of the [SEC] and will be further expended in connection with stockholder class action law suits alleging damages arising out of such transactions. As a result of defendants' actions, the reputation and public image of Solitron has been tarnished, and such has and will result in damage to Solitron and its business." (Complaint, ¶19).

Plaintiffs plead that defendants' conduct amounts to "gross negligence," and "breach of fiduciary duties and obligations to Solitron and its shareholders."

The Complaint contains the usual boiler plate allegation relied upon to evade compliance with Rule 23.1 F.R.Civ.P.

and § 626, N.Y. Business Corporations Law:

"No demand has been made by plaintiff upon the board of directors of Solitron to institute an action because it would be futile to do so, since the directors of Solitron instigated participated, aided and abetted each other, approved and acquiesced in the acts and transactions complained of herein and they cannot be expected to sue themselves or conduct such an action in good faith." (Complaint, ¶21).

■ Viewed most favorably, this Complaint states a claim arising under state law. After this action was filed, and on June 9, 1975, the Supreme Court decided *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). There, the Supreme Court specifically affirmed the black letter doctrine in this Circuit [*Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir. 1952)] that Rule 10b–5 is aimed only at a fraud perpetrated upon the purchaser or seller of securities.

Here, Solitron was neither a purchaser nor a seller, and no damages flowed to the corporation from any fraud in connection with any such purchase or sale by it.

■ On the authority of *Blue Chip Stamps, supra* so much of plaintiff's Complaint as relies upon Section 10, or Rule 10b–5 must be and is dismissed for failure to state a claim.

To the extent plaintiffs rely on Section 18 of the 1934 Act, the rule is the same; plaintiff (here, Solitron) to maintain such an action at very least must have purchased or sold a security and the injury must have been the direct result of such purchase or sale. *Hoover v. Allen*, 241 F.Supp. 213, 223 (S.D.N.Y. 1965).

■ ■ Insofar as concerns Section 14 of the 1934 Act, the misleading proxy statements here did not cause any damage to the corporation in the ordinary sense, in that management obtained authorization of shareholders for corporate actions by means of deceptive or inadequate disclosure therein. *J. I. Case Co. v. Borak*, 377 U.S. 426, 431, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). See also *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374 (2d Cir. 1974), which requires that plaintiff plead two types of causation in order to state a Section 14a claim, "transaction causation to show a violation of the law from which an appellant may recover, and loss causation to show damages." 507 F.2d at 382. Here, the damage, if any, will flow from breach of a fiduciary obligation owed as a director or officer, rather than from any shareholder vote obtained by false proxy solicitation materials.

In opposing defendants' motion to dismiss, plaintiffs have relied on three cases, *Entel v. Allen*, 270 F.Supp. 60 (S.D.N.Y.1967), *Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967) and *A. T. Brod & Co. v. Perlow*, 375 F.2d 393 (2d Cir. 1967), "all derivative actions brought under Rule 10b–5." (Pl. Mem., p. 7). Plaintiff also asserts that the Supreme Court's affirmation of the *Birnbaum* doctrine in *Blue Chip Stamps, supra*, is inapposite here since *Blue Chip* was a class action, rather than a derivative action. (Pl. Mem., p. 6).

Plaintiffs' reliance on *Entel, Vine* and *Brod* is misplaced. *Brod* was not a derivative action. There, clearly, plaintiff was a purchaser of securities (375 F. Supp. at 397, n. 3). In *Entel*, plaintiffs sued derivatively alleging that their corporation had been defrauded when it sold stock which it held in another company. In *Vine*, the defendant had made a tender offer for 95% of the common stock of another corporation in order to effectuate a short-form merger. Thus, both *Entel* and *Vine* involved corporate purchases and/or sales of securities. No such purchases or sales by Solitron have been alleged in this action.

■ Contrary to plaintiffs' other contention, the Supreme Court's opinion in *Blue Chip* does indeed address itself to the problem posed by derivative suits. In discussing the development of the

*Birnbaum* rule, the Supreme Court stated that plaintiff-stockholders suing under Rule 10b–5 ". . . may frequently be able to circumvent the *Birnbaum* limitation through bringing a derivative action on behalf of the corporate issuer *if the latter is itself a purchaser or seller of securities.*" 421 U.S. at 738, 95 S.Ct. at 1926 (Emphasis added). This comment certainly suggests that where, like Solitron, a corporation is neither a purchaser nor a seller of securities, a plaintiff who sues derivatively states no claim under Rule 10b–5.

■ As we have no properly pleaded federal claim pursuant to which we may exercise pendent jurisdiction, the Court declines as a matter of discretion to take the so-called pendent claims. *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176 (2d Cir. 1974).

■ In view of this conclusion we probably need not concern ourselves with the gross and apparent failure to satisfy the pleading requirements of Rule 9(b), F.R.Civ.P., except that we adopt the language of Judge Pollack in *Lewis v. Varnes*, 368 F.Supp. 45, 47 (S.D.N.Y.1974):

"Allegations of fraud have serious repercussions in the business world, and should not be cavalierly appended to other claims for their presumed *in terrorem* effect."

See also, *Segal v. Gordon*, 467 F.2d 602, 607–8 (2d Cir. 1972).

■ Defendants' request for costs is denied, because this action was filed before *Blue Chip Stamps* was decided by the Supreme Court.

A further difficulty presents itself; on June 10, 1975 in the Consolidated Class Action, this Court made an Order which provided (p. 4):

"that until the final determination of the consolidated action, all other present or former stockholders of Solitron Devices, Inc. are hereby stayed from instituting or prosecuting or continuing the prosecution of any action, suit or proceeding other than by motion for intervention in the consolidated action against any of the defendants named in the consolidated action to the extent that such action, suit or proceeding asserts the causes of action alleged, the demands made or the relief sought, *or arises out of the transactions complained of in such consolidated action.*" (Emphasis Added).

■ This litigation is squarely within the terms of the prohibition embodied in our stay. After plaintiffs' attorneys had actual notice of the stay, they attempted, without applying to the Court for relief from the stay, to conduct discovery in this action. The Court also has been advised, and it is not denied, that plaintiffs' counsel suggested (defendants say, threatened), to institute the same litigation in another (state) forum should this Complaint be dismissed.

At the hearing on this motion held September 16, 1975, this Court, by an oral order from the bench, stayed any such conduct by plaintiffs or their attorneys, for their own account or for the account of others, and continues that stay.

Neither plaintiffs, nor their attorneys in this action, individually, or as agents or as attorneys for others, nor any person having actual notice, shall initiate or maintain any litigation which violates the terms of the stay Order of June 10, 1975, or the oral stay which was imposed by this Court in this action on September 16, 1975 and is hereby continued.

The final judgment to be settled herein shall contain clear and conclusive provisions imposing such a stay, which is and was necessary in order to permit this Court to administer the Consolidated Class Action properly. The derivative claims are an essential part of the controversy presented in that litigation and any fragmentation thereof will impede the administration of justice and may harm the corporation or its shareholders. The Court has, and hereby ex-

ercises pendent jurisdiction thereof in the Consolidated Class Action.

 Exempted from the provisions of the stay shall be the making of a demand upon Solitron management to assert the derivative claims of Solitron against officers, directors or others. This Court rejects the boiler plate allegations in this Complaint, quoted *supra,* pp. 32–33, to the effect that any such demand would be futile. Experience shows that in many such cases where the misconduct complained of arguably may in fact constitute negligence, rather than "fraud" of the unspecified sort here pleaded, the directors or the corporation are insured. Under such circumstances, competent management, in litigation where control of the corporation is not at stake, often will assert the rights of the corporation against its own board members and past or present officers. At least policy requires us to give management an opportunity to do so.

Accordingly, the Court should look with disfavor upon boiler plate allegations in derivative actions to the effect that such demand would be futile.

Such a demand might be satisfied by Solitron asserting third-party complaints or cross-complaints in the Consolidated Class Action. Alternatively, it may be that written agreements between Solitron and the defendants in this action, tolling the Statute of Limitations, and waiving such defenses as laches or waiver, will be sufficient to protect the rights of Solitron shareholders in the event Solitron loses the class action.

It is possible that it may require from ten to twelve months to litigate the issues in the Consolidated Class Action on the merits, and Solitron management might be well advised to act now to protect such rights as the corporation might have in that event.

Although one defendant has not joined in the motions to dismiss, his position is indistinguishable from that of the other defendants, and the same relief will be granted as to him upon the Court's own motion.

A final judgment shall be settled on notice dismissing the action without costs and providing that such determination is made without prejudice to the rights of Solitron. Such judgment shall contain explicit stay provisions consistent with the foregoing, so drafted as to lend themselves to proper enforcement in the event of breach, and shall provide for personal service of a copy thereof upon plaintiffs and their attorneys.

Settle judgment on ten (10) days notice.